[Cite as *State v. Dunlap*, 2018-Ohio-3658.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No.  28762 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| FLOYD J. DUNLAP, JR. | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.  CR 2015-11-3520 |

DECISION AND JOURNAL ENTRY

Dated: September 12, 2018

CALLAHAN, Judge.

**{¶1}** Floyd Dunlap appeals an order of the Summit County Court of Common Pleas that denied his motion to suppress. This Court affirms.

I.

**{¶2}** According to Akron police detective Todd Sinsley, he saw a car leave from a residence where there had been complaints about possible drug dealings and decided to follow it in an unmarked vehicle. As he was observing the car, he saw it pull over slightly and stop. At the same time, he saw a woman who was on a cell phone run down to the car from a porch and begin talking to the driver. After he saw the woman hand what he believed to be money to the driver, he radioed to nearby officers to stop them, suspecting that they were engaging in a drug deal.

**{¶3}** Detective Brian Boss and his partner, Lieutenant Michael Yohe, initiated a traffic stop of the car based on the information that they received from Detective Sinsley. According to

Detective Boss, as he was approaching the driver, Mr. Dunlap, he saw Mr. Dunlap conceal something in his hand and then drop it on the floorboard. There was a child in the passenger seat. Upon learning that Mr. Dunlap was driving under a suspended license, the detective arrested him. A subsequent search of the car uncovered a number of different types of drugs as well as a firearm. Following his arrest, Mr. Dunlap told officers about his drug use and about additional drugs that he had at his house. When officers searched the house, they found the drugs Mr. Dunlap described.

{¶4} The Grand Jury indicted Mr. Dunlap for aggravated trafficking in drugs, aggravated possession of drugs, trafficking in heroin, possession of heroin, trafficking in cocaine, possession of cocaine, having weapons while under disability, endangering children, driving under suspension, and possession of drugs. Mr. Dunlap moved to suppress the evidence against him, arguing that Detective Boss did not have reasonable suspicion to stop his car and that the officers violated his *Miranda* rights. Following a hearing on his motion, the trial court denied it. After the State dismissed some of the charges, Mr. Dunlap pleaded no contest to the rest. The trial court found him guilty and sentenced him to a total of four years of imprisonment. Mr. Dunlap has appealed, assigning as error that the trial court incorrectly denied his motion to suppress.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED WHEN IT FAILED TO SUPPRESS ALL EVIDENCE AND STATEMENTS OBTAINED IN VIOLATION OF APPELLANT DUNLAP'S FOURTH, FIFTH AND SIXTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS TEN AND FOURTEEN OF THE OHIO CONSTITUTION.

**{¶5}** Mr. Dunlap argues that the trial court should have suppressed the evidence found in his car because the officers did not have any justification to stop and search it. He also argues that the court should have suppressed his statements to officers because he did not waive his *Miranda* rights. Finally, he argues that the court should have suppressed the evidence found during the search of his house because it was the fruit of the poisonous tree.

**{¶6}** A motion to suppress evidence "presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court gives deference to and "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.* at ¶ 8, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997).

**{¶7}** Regarding the stop and search of Mr. Dunlap's car, we note that, although a police officer generally may not seize a person within the meaning of the Fourth Amendment unless he has probable cause to arrest him for a crime, "not all seizures of the person must be justified by probable cause * * *." *Florida v. Royer*, 460 U.S. 491, 498 (1983). "A police officer may stop a car if he has a reasonable, articulable suspicion that a person in the car is or has engaged in criminal activity." *State v. Kodman*, 9th Dist. Medina No. 06CA0100-M, 2007-Ohio-5605, ¶ 3, citing *State v. VanScoder*, 92 Ohio App.3d 853, 855 (9th Dist. 1994); *see also State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 8 (explaining that an officer may stop a

vehicle if he has reasonable and articulable suspicion that the driver has committed a traffic violation). "The purpose of an investigatory stop is to allow a police officer to confirm or dispel suspicions of criminal activity through reasonable questioning." *State v. Stanley*, 11th Dist. Portage No. 2007-P-0104, 2008-Ohio-3258, ¶ 18, citing *United States v. Hickman*, 523 F.2d 323, 327 (9th Cir.1975). Before initiating such a stop, a "police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). "[I]t is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Id*. at 21-22, quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925).

{¶8} Detective Boss stopped the car on the direction of Detective Sinsley. According to Detective Sinsley, as he was following Mr. Dunlap's car, he saw a woman on a porch hang up on her cell phone and run down to the car. At the same time, he saw the car pull out of its lane slightly and stop. He saw the woman approach the car and begin talking to the driver. She then reached into the car with what appeared to be money and handed it to Mr. Dunlap. Detective Sinsley testified that, from his experience, he believed that Mr. Dunlap and the woman were engaging in a hand-to-hand drug deal. According to the Detective, the primary way that his department makes arrests for street-level drug transactions is to sit in an unmarked vehicle and watch things. He explained that, since drug transactions are prevalent in Akron, it is just a matter of selecting the right location. He testified that, over the course of his career, he had witnessed hundreds of such transactions.

{¶9} "In forming reasonable articulable suspicion, law enforcement officers may 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *State v. Taylor*, 9th Dist. Summit No. 26693, 2013-Ohio-3906, ¶ 7, quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002). The trial court found Detective Sinsley's testimony about his experience and reasons for directing a stop to be credible. Mr. Dunlap has not challenged its finding. Upon review of the record, we conclude that Detective Sinsley's observations, in light of his experience, gave him reasonable, articulable suspicion to direct a traffic stop of Mr. Dunlap's car.

{¶10} The officers who testified also explained that the stop was permitted because Mr. Dunlap had committed a traffic infraction. According to Detective Sinsley, although Mr. Dunlap pulled his car slightly out of its lane when he stopped, the car was still blocking his lane of travel. Lieutenant Yohe also testified that, when he saw Mr. Dunlap's car, it was in the middle of the roadway impeding the flow of traffic. Akron Codified Ordinance 73.21(A) provides that "[n]o person shall stop or operate a vehicle at a slow speed which will impede or block the normal and reasonable movement of traffic, except when stopping or reduced speed is necessary for safe operation or to comply with law." Upon review of the record, we conclude that the officers also had reasonable, articulable suspicion that Mr. Dunlap had committed a traffic violation. *Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, at ¶ 8. We, therefore, reject Mr. Dunlap's argument that the traffic stop violated his constitutional rights.

{¶11} Regarding his *Miranda* rights, Mr. Dunlap argues that it was impossible for him to give a knowing, intelligent, and voluntary waiver of his rights because, at the time of the stop, he had been under the influence of methamphetamine for four or five days. The State has the

burden of proving by the preponderance of the evidence that a defendant's waiver of *Miranda* rights was knowing, intelligent, and voluntary. *State v. Barker*, 149 Ohio St.3d 1, 2016-Ohio-2708, ¶ 30. Lieutenant Yohe testified that, when he spoke to Mr. Dunlap after Mr. Dunlap's arrest, he advised Mr. Dunlap of his *Miranda* rights. He then asked Mr. Dunlap if he understood his rights, and Mr. Dunlap answered that he did. Lieutenant Yohe testified that, in his observation, Mr. Dunlap appeared to understand his rights. Although Lieutenant Yohe acknowledged that Mr. Dunlap told him that he had been using methamphetamine for days, the lieutenant did not see any overt signs that Mr. Dunlap was high or impaired. According to the lieutenant, Mr. Dunlap spoke in clear sentences and appeared to have his wits about him. The trial court found Lieutenant Yohe's testimony credible, which Mr. Dunlap has not challenged on appeal. Upon review of the record, we conclude that it does not support Mr. Dunlap's argument that his waiver of his *Miranda* rights was not knowing, intelligent, and voluntary.

{¶12} Finally, concerning Mr. Dunlap's fruit of the poisonous tree argument, we note that it is based on his claim that the stop of his vehicle was not justified and that his *Miranda* waiver was invalid. In light of our conclusion that the stop and waiver were valid, we reject his fruit of the poisonous tree argument. *See State v. Henderson*, 51 Ohio St.3d 54, 57 (1990). Mr. Dunlap's assignment of error is overruled.

### III.

{¶13} Mr. Dunlap's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

SCHAFER, P. J.
CARR, J.
CONCUR.

APPEARANCES:

DONALD R. HICKS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.