[Cite as *State v. Lawson*, 2023-Ohio-3456.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 30409 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DONNELL LAWSON | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 20 01 0001 |

DECISION AND JOURNAL ENTRY

Dated: September 27, 2023

SUTTON, Presiding Judge.

{¶1} Defendant-Appellant, Donnell Lawson, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} Mr. Lawson shot his mother's boyfriend, M.P., while M.P. was lying on his stomach in bed. The three lived together and, before the shooting, Mr. Lawson had consumed alcohol and taken drugs. Although Mr. Lawson had been prescribed medication to control his mental illness, he was not taking his medication at the time of the shooting.

{¶3} Police officers brought Mr. Lawson and his mother to the police station to be interviewed. During their separate interviews, they told conflicting stories. When detectives reported those inconsistencies to the mother during a second interview, she admitted Mr. Lawson had shot M.P. The detectives then spoke to Mr. Lawson again, and he admitted he shot M.P.

{¶4}    A grand jury indicted Mr. Lawson for murder, felony murder, felonious assault, having a weapon under disability, and several firearm specifications.  He was found competent to stand trial and withdrew a plea of not guilty by reason of insanity once an expert determined he was sane when he shot M.P.  Mr. Lawson moved to suppress statements he made to detectives, but the trial court denied his motion.  A jury found him guilty on all counts, and the trial court sentenced him to a total of 18 years to life in prison.

{¶5}    Mr. Lawson now appeals from his convictions and raises two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ERRED WHEN IT DENIED [MR. LAWSON'S] MOTION TO SUPPRESS[.]**

{¶6}    In his first assignment of error, Mr. Lawson argues the trial court erred by denying his motion to suppress.  He argues the court should have excluded statements he made to the police because he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights and his statements were involuntary.  Upon review, we reject his argument.

{¶7}    A motion to suppress evidence presents a mixed question of law and fact.  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.  "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses."  *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992).  Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence."  *Burnside* at ¶ 8.  "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial

court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶8} "When a suspect is questioned in a custodial setting, the Fifth Amendment requires that he receive *Miranda* warnings to protect against compelled self-incrimination." *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, ¶ 34. "The State has the burden of proving by the preponderance of the evidence that a defendant's waiver of *Miranda* rights was knowing, intelligent, and voluntary." *State v. Dunlap*, 9th Dist. Summit No. 28762, 2018-Ohio-3658, ¶ 11. The waiver must have been "'a free and deliberate choice'" of the accused rather than a product of "'intimidation, coercion, or deception.'" *State v. Dailey*, 53 Ohio St.3d 88, 91 (1990), quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Further, it "'must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Dailey* at 91, quoting *Moran* at 421. Courts "review the totality of the circumstances in determining whether a suspect has voluntarily waived his *Miranda* rights." *State v. Rafferty*, 9th Dist. Summit No. 26724, 2015-Ohio-1629, ¶ 33.

{¶9} The question of whether law enforcement officials complied with *Miranda* and the question of whether a confession was voluntary "are analytically separate inquires.'" *State v. Anderson*, 9th Dist. Summit Nos. 30081, 30082, 30083, 2023-Ohio-2364, ¶ 35, quoting *State v. Porter*, 178 Ohio App.3d 304, 2008-Ohio-4627, ¶ 14 (2d Dist.). Due Process requires the exclusion of an involuntarily induced statement even when the strictures of *Miranda* have been satisfied or are inapplicable. *Rafferty* at ¶ 37; *State v. Antoline*, 9th Dist. Lorain No. 02CA008100, 2003-Ohio-1130, ¶ 21. To determine whether a confession was voluntary, courts apply the same totality of the circumstances test that applies when courts assess the voluntariness of a *Miranda* waiver. *State v. Clark*, 38 Ohio St.3d 252, 261 (1988). The totality of the circumstances "includes

'e.g., the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'" *State v. Lather*, 110 Ohio St.3d 270, 2006-Ohio-4477, ¶ 9, quoting *State v. Dixon*, 101 Ohio St.3d 328, 2004-Ohio-1585, ¶ 25.

{¶10} The Supreme Court has recognized that "the use of an inherently coercive tactic by police is a prerequisite to a finding of involuntariness." *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 71. *Accord Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, at ¶ 35; *State v. Snow*, 9th Dist. Summit No. 19742, 2000 WL 670664, *2 (May 24, 2000). A court need not assess the totality of the circumstances if there is no evidence of such tactics. *Perez* at ¶ 71. "Evidence of use by the interrogators of an inherently coercive tactic (e.g., physical abuse, threats, deprivation of food, medical treatment, or sleep) will trigger the totality of the circumstances analysis." *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, ¶ 93, quoting *State v. Clark*, 38 Ohio St.3d 252, 261 (1988).

{¶11} The trial court made each of the following factual findings. The police were dispatched to a residence regarding a homicide shortly after 7:00 a.m. They encountered Mr. Lawson and his mother at the residence, brought them back to the police station, and placed them in separate interview rooms. At that time, a detective gave Mr. Lawson water to drink. Mr. Lawson then waited in his interview room while two detectives interviewed his mother. During their interview with the mother, the detectives learned Mr. Lawson suffered from schizophrenia and had a mental health-related episode several days earlier. They also learned he had stayed awake until the early hours of the morning, consuming alcohol and using drugs.

{¶12} The detectives concluded their initial interview with the mother and briefly observed Mr. Lawson before beginning his interview. As they watched Mr. Lawson, they noticed

him speaking to himself. Mr. Lawson was able to follow along, however, as one of the detectives obtained a buccal swab from him and conducted a gunshot residue test. In fact, when the detective sought to obtain Mr. Lawson's buccal swab, Mr. Lawson told the detective the police should already have his DNA on file from an earlier, unrelated incident. The detective administered Mr. Lawson's *Miranda* warnings by reading them from a card. When she asked him whether he understood each of his rights, he responded affirmatively.

{¶13} The trial court found Mr. Lawson spent a total of six hours and forty-two minutes in his interview room, but much of that time was spent waiting while detectives spoke with his mother. The detectives interviewed the mother twice and interviewed Mr. Lawson twice. Collectively, his interviews lasted two hours and forty minutes. The trial court found that, during interview breaks, Mr. Lawson sometimes touched the walls, hummed, rapped, or talked to himself. He also repeated words and phrases and "meandered off topic" while speaking with the detectives. Nevertheless, he answered questions posed to him by the detectives and discussed concerns he had for his family, his mental illness, and his relationship with his mother. The trial court found no evidence that Mr. Lawson did not understand what was happening during his interviews or the impact of the statements he made.

{¶14} The trial court found that detectives never engaged in any tactics to threaten, harass, abuse, or coerce Mr. Lawson. They let him know his mother had "told [them] what happened," and encouraged him to do the same. They never promised him leniency, misstated the law, or discussed any potential punishments. The trial court concluded that Mr. Lawson knowingly, intelligently, and voluntarily waived his *Miranda* rights and voluntarily confessed. Consequently, it denied his motion to suppress.

{¶15} Mr. Lawson has not challenged any of the trial court's factual findings. Instead, he challenges the court's legal conclusion that he acted in a knowing, intelligent, and voluntary manner when he (1) waived his *Miranda* rights, and (2) confessed. While he had prior experience with the criminal justice system, Mr. Lawson argues, the detectives never asked him about his level of education or his ability to read or write. They failed to ensure he understood his "complex constitutional right," particularly when they knew he had not slept enough, had been drinking, and had taken drugs. Further, Mr. Lawson argues, the detectives knew he suffered from untreated mental health issues and observed behavior that should have alerted them to his altered mental state. Because the evidence showed he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights and confess, Mr. Lawson argues, the trial court erred by denying his motion to suppress.

{¶16} This Court accepts the trial court's factual findings, which Mr. Lawson has not challenged, as they are supported by competent, credible evidence. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. Further, upon review, we must conclude the trial court reached the correct legal conclusion when it denied Mr. Lawson's motion to suppress. *See id.*

{¶17} Mr. Lawson nodded his head and responded affirmatively when a detective explained she would need to obtain DNA and gunshot residue samples from him. He signed the forms he was handed and asked why the police did not already have his information on file. He gave no indication he could not understand the forms he was handed, write his name, or understand the procedures the detective performed in taking samples from his mouth and hands. Instead, he chatted with the detective as she prepared to collect the samples. When the detective read Mr. Lawson his *Miranda* rights, she paused after reading each right and asked him whether he understood the right she had described. Each time, he said he understood. He also responded

affirmatively when the detective finished reading his rights and asked whether he wished to speak with her. Mr. Lawson spoke coherently, and the detective testified that she did not notice any indicators of impairment while speaking with him. The record supports the trial court's conclusion that the State proved Mr. Lawson knowingly and intelligently waived his *Miranda* rights. *See Dunlap*, 2018-Ohio-3658, at ¶ 11.

{¶18} As to the voluntariness of Mr. Lawson's *Miranda* waiver and confession, he has failed to identify any coercive tactics on the part of the police that would trigger a totality of the circumstances review. *See Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, at ¶ 71. The detectives provided him with water, afforded him a lengthy break while speaking with his mother, and never engaged in any physical abuse. Additionally, there is no evidence they denied him food, sleep, or medical treatment. *See Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, at ¶ 93, quoting *Clark*, 38 Ohio St.3d at 261. While the detectives repeatedly encouraged Mr. Lawson to tell them what really happened, "[a]dmonitions to tell the truth are considered to be neither threats nor promises * * *." *State v. Loza*, 71 Ohio St.3d 61, 67 (1994). Mr. Lawson's argument that his confession was involuntary is based on the detectives having interviewed him when they knew he had mental health issues, had not slept, had consumed alcohol, and had taken drugs. Yet, "the use of an inherently coercive tactic by police is a prerequisite to a finding of involuntariness." *Perez* at ¶ 71. *See also Colorado v. Connelly*, 479 U.S. 157, 164 (1986). This Court will not engage in a review of the totality of the circumstances when Mr. Lawson has not set forth any evidence or argument in support of that prerequisite. *See* App.R. 16(A)(7). Upon review, Mr. Lawson has not shown the police involuntarily induced his *Miranda* waiver or his confession. We reject his argument that the trial court erred by denying his motion to suppress. As such, Mr. Lawson's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED WHEN IT DENIED [MR. LAWSON'S] REQUEST FOR A JURY INSTRUCTION OF RECKLESS HOMICIDE[.]**

{¶19} In his second assignment of error, Mr. Lawson argues the trial court erred when it refused to instruct the jury on reckless homicide. We disagree.

{¶20} "[A] trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus, citing Crim.R. 30(A). "This Court reviews a trial court's decision to give or not give jury instructions for an abuse of discretion under the particular facts and circumstances of the case." *State v. Calise*, 9th Dist. Summit No. 26027, 2012-Ohio-4797, ¶ 68. An abuse of discretion implies the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court may not simply substitute its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶21} A person commits murder if he "purposely cause[s] the death of another * * *." R.C. 2903.02(A). A person commits reckless homicide if he "recklessly cause[s] the death of another * * *." R.C. 2903.041(A). *See also* R.C. 2901.22 (defining culpable mental states). "[R]eckless homicide is a lesser included offense of murder * * *." *State v. Elwell*, 9th Dist. Lorain No. 06CA008923, 2007-Ohio-3122, ¶ 39. "A jury instruction on a lesser included offense, however, is required only when the evidence presented at trial 'would reasonably support *both* an acquittal on the crime charged and a conviction upon the lesser included offense.'" (Emphasis in original.) *State v. Brown*, 9th Dist. Lorain No. 20CA011618, 2021-Ohio-2540, ¶ 56, quoting *State v. Thomas*, 40 Ohio St.3d 213 (1988), paragraph two of the syllabus. "In deciding whether to

instruct the jury on a lesser-included or inferior-degree offense, the trial court must view the evidence in a light most favorable to the defendant." *State v. Meadows*, 9th Dist. Summit No. 26549, 2013-Ohio-4271, ¶ 8.

{¶22} While being interviewed by the police, Mr. Lawson and his mother offered conflicting information. The mother initially told detectives a third party shot M.P. while she, M.P., and Mr. Lawson were sleeping in the same room. Mr. Lawson initially told detectives he was in a different room when the shooting occurred. When the detectives spoke with the mother a second time, she admitted Mr. Lawson had shot M.P. The detectives then returned to speak with Mr. Lawson. During that interview, Mr. Lawson confessed. He told the detectives he shot M.P. because M.P. "was gay and * * * had possibly messed with [Mr. Lawson's] son, who was two or three at the time."

{¶23} The evidence showed M.P. died from a single gunshot wound to his back, delivered while he was lying on his stomach in bed. His daughter and niece testified that M.P. lived with Mr. Lawson and his mother and paid their bills. According to the niece, M.P. did not have a good relationship with Mr. Lawson, and Mr. Lawson and his mother expected M.P. to spend his money on them. According to the daughter, M.P. was shot on the day he had planned to move out of Mr. Lawson and the mother's residence.

{¶24} At trial, Mr. Lawson testified in his own defense. He explained how he suffered from a mental illness and how that illness affected him. He described experiencing extreme instances of paranoia and partaking in irrational behavior. Mr. Lawson admitted he did not like taking his prescription medications due to their side effects. Around the time of the shooting, he testified, he was not taking his medication and was using drugs and alcohol to self-medicate. He claimed he never planned to kill M.P. but shot him because he came to believe M.P. "was out to

get [his] eyeballs and [his] brain cells." He agreed that he felt M.P. presented a clear and present danger to him at the time of the shooting.

{¶25} The defense sought to advance two theories at trial. The first was that Mr. Lawson engaged in reckless behavior when he failed to take his prescription medications and opted to self-medicate with illegal drugs and alcohol. The defense claimed the resulting paranoia Mr. Lawson experienced led him to shoot M.P. The second, related theory the defense posited was that Mr. Lawson shot M.P. in self-defense when his mental illness and paranoia caused him to believe he was in imminent danger of death or great bodily harm from M.P.

{¶26} The trial court instructed the jury on self-defense but refused to issue an instruction on the lesser-included offense of reckless homicide. The court found that instruction would be inconsistent with the evidence and argument the defense presented in support of its self-defense theory. While Mr. Lawson might have acted recklessly in choosing not to take his medication, the court reasoned, the evidence showed that he intended to shoot M.P. Mr. Lawson told the police he shot M.P. because he thought M.P. might have molested his son. M.P. told the jury he shot M.P. because he thought M.P. wanted to harm him. The court found that, regardless of his reason for doing so, Mr. Lawson meant to shoot M.P. Accordingly, the trial court found the evidence presented at trial would not warrant an instruction on reckless homicide.

{¶27} Mr. Lawson argues the trial court abused its discretion when it refused to instruct the jury on reckless homicide. He argues there was no evidence that he planned to kill M.P. or acted with purpose when he shot him. Rather, the evidence showed he was sleep-deprived, under the influence of narcotics and alcohol, and suffering from paranoia related to his mental illness. Mr. Lawson argues the evidence, when viewed in his favor, supports the conclusion that he acted

with reckless disregard for the consequences of his actions. Thus, he claims he was entitled to an instruction on reckless homicide.

{¶28} Having reviewed the record, we cannot conclude the trial court abused its discretion when it refused to instruct the jury on reckless homicide. The trial court was only required to issue that instruction if the evidence presented at trial reasonably supported both an acquittal on the murder charge and a conviction for reckless homicide. *Brown*, 2021-Ohio-2540, at ¶ 55, quoting *Thomas*, 40 Ohio St.3d at paragraph two of the syllabus. Whatever his specific reason for doing so, Mr. Lawson told the police and the jury that he meant to shoot M.P. The jury heard evidence that he intentionally shot M.P. in the back while M.P. lay in bed. "Even viewing the evidence at trial in the light most favorable to [Mr. Lawson], this Court cannot conclude that [he] could reasonably have been acquitted of murder." *Brown* at ¶ 57. *See also State v. Thomas*, 9th Dist. Summit No. 27266, 2015-Ohio-2935, ¶ 31. Accordingly, the trial court did not abuse its discretion when it refused to issue the jury an instruction on reckless homicide. Mr. Lawson's second assignment of error is overruled.

III.

{¶29} Mr. Lawson's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

HENSAL, J.
STEVENSON, J.
CONCUR.

APPEARANCES:

ANGELA M. KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.